IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
AT KANSAS CITY

| | |
|---|---|
| **LORA HIBDON and CATHY CASSIDY** on behalf of themselves and all others similarly situated, <br><br> **Plaintiffs,** <br><br> v. <br><br> **APPLE BUS COMPANY,** <br>   Serve: BC Agent Services, Inc. <br>          One Kansas City Place <br>          1200 Main Street, Suite 3800 <br>          Kansas City, MO 64105 <br><br> **Defendant.** | Case No. |

## CLASS AND COLLECTIVE ACTION COMPLAINT

For their class and collective action Complaint against Defendant Apple Bus Company ("Apple Bus"), Plaintiffs Lora Hibdon and Cathy Cassidy state and alleges as follows:

## INTRODUCTION

1. Plaintiffs Lora Hibdon ("Hibdon") and Cathy Cassidy ("Cassidy")(collectively "Plaintiffs") bring this action for violations of § 16(b) of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b) *et seq.*, and the Missouri Minimum Wage Law, § 290.500 RSMo., *et seq.*, and also assert common law claims for breach of contract, *quantum meruit*, unjust enrichment and fraud.

2. This action is brought as a collective action under § 216(b) of the FLSA and as a state-wide class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

3. Defendant Apple Bus willfully and flagrantly violated the FLSA and the MMWL by, among other things, manipulating payroll to conceal the true hours worked by its employees and forcing employees to perform work-related tasks without pay.

4. Plaintiffs are seeking unpaid regular wages, overtime compensation, liquidated damages and attorney's fees and costs.

## THE PARTIES

5. Plaintiff Hibdon is a resident of Peculiar, Missouri and a former hourly non-exempt employee of Defendant Apple Bus within the meaning of FLSA, 29 U.S.C. § 203 during the applicable statute of limitations period.

6. Plaintiff Cassidy is a resident of Harrisonville, Missouri and a former hourly non-exempt employee of Defendant Apple Bus within the meaning of FLSA, 29 U.S.C. § 203 during the applicable statute of limitations period.

7. Defendant Apple Bus is a corporation duly organized and existing under the laws of the State of Missouri, with its principal place of business at 230 E. Main Street, Cleveland, MO 64734.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court under § 16(b) of the FLSA, 29 U.S.C. § 216(b), and under 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce."

9. Defendant has employees engaged in commerce within the meaning of 29 U.S.C. § 203(b) and its annual sales exceed $500,000, so the FLSA applies in this case on an enterprise basis pursuant to 29 U.S.C. § 207(a)(1).

10. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because they arise from the same facts.

11. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant Apple Bus has its principal place of business in Cass County, Missouri and because it is subject to personal jurisdiction in Missouri. Likewise, the actions and omissions giving rise to the claims pleaded in this Complaint occurred in this District.

## FACTUAL ALLEGATIONS

12. During the applicable statute of limitations period, Apple Bus provided school transportation services throughout several states, including the State of Missouri.

13. During the applicable statute of limitations period, Apple Bus employed Plaintiffs and others similarly situated as school bus drivers in connection with Defendant's business. Plaintiffs were employed on an hourly basis throughout the entirety of their employment with Apple Bus and were paid—or were supposed to be paid—every two weeks for the hours they worked during the previous two-week period.

14. While employed at Defendant, Plaintiffs performed various work-related tasks in addition to driving their normal school bus routes. These additional tasks included, among other things, cleaning and refueling the buses, training, filling in for other drivers who were sick or otherwise unable to drive, and driving for school field trips and school sporting events.

15. Plaintiffs' rates of pay differed depending on the particular task(s) they performed.

16. Plaintiffs relied on Apple Bus to properly pay them based upon the particular task(s) they performed during particular pay periods.

17. Apple Bus did not make available a time clock to employees to enable them to accurately record the hours they worked. Instead, Apple Bus required employees to utilize one of four pre-printed forms to keep track of their time.

18. The form for regular "routes" was printed on white paper and titled "Transportation Service Order"; the form for "trips" was printed on white paper and titled "Daily Bus Movement Report"; the form for "training" was printed on orange paper; and the form for "extra work" was printed on blue paper.

19. These forms required employees to write down, among other things, the particular task they performed, the date they rendered performance, and the number of hours or fractions of an hour they spent performing the task.

20. Apple Bus utilized these forms to determine how much bill school districts for transporting students.

21. Apple Bus also used these forms to determine how much to pay employees like Hibdon and Cassidy.

22. Because these forms were used to determine her pay, Plaintiffs carefully and painstakingly completed each form to ensure they would be paid correctly.

23. In reality, while Apple Bus may have used these forms to determine how much to pay employees, it did not pay employees in strict accordance with the hours these forms showed. Instead, Apple Bus intentionally and routinely paid employees less than the information on these forms warranted.

24. By using pre-printed forms that employees completed by hand rather than a time clock, Apple Bus allowed itself flexibility to shave employees' time and/or decline to pay them for particular tasks they performed. There was no "objective" record of what employees did or the time they spent doing it. Thus, from a practical standpoint, Apple Bus had discretion to pay employees for fewer hours than they actually recorded and/or for different tasks than they actually performed and could refuse to pay them at all for tangential

tasks that were necessary and compensable but did not consume a significant part of the day (e.g., cleaning).

25. Apple Bus did in fact utilize the flexibility these pre-printed forms provided to underpay its employees. Time and time again, Plaintiffs looked at their paychecks and found those paychecks did not reflect the hours they had worked, but instead reflected fewer hours and/or a lesser rate of pay. The total dollar amount was less—and in some cases, far less—than Plaintiffs expected and were entitled to receive.

26. Plaintiffs complained to their supervisors and/or other management employees on multiple occasions about this discrepancy to no avail. Supervisors would accuse Cassidy of falsifying hours or failing to turn in the proper form and refuse to afford her any relief. This was a standard practice at Apple Bus. Whenever an employee complained about a pay discrepancy, Apple Bus would challenge the employee's integrity and the veracity of the information the employee submitted. This was intended to intimidate the employee so as to stop him or her from continuing to press his or her claim for additional compensation or complaining in the future.

27. At some point, Cassidy recognized that Apple Bus could not be trusted to pay her properly. As a result, Cassidy began maintaining her own, separate time records so she could better establish the pay she was entitled to receive. She thought that by presented detailed information about the hours she worked and the tasks she performed, Apple Bus would be forced to do the right thing. Yet, even when Cassidy presented these records to Apple Bus, it balked at paying her properly.

28. Things got so bad that on at least one occasion, Cassidy contacted a school district she had driven for and inquired whether that school district had a record of her time. Through this inquiry, she learned that Apple Bus had billed the school district in strict

accordance with the hours Cassidy recorded on the form she submitted, but then issued a paycheck to her reflected fewer hours. Apple Bus wanted to be paid for all the time Cassidy worked but did not want to pay Cassidy for all that time.

29. In those rare instances when Apple Bus actually agreed to correct Plaintiffs' hours, the correction would take several weeks and require considerable effort on Plaintiffs' parts. And then, even though Plaintiffs received additional compensation, it was difficult if not impossible to reconcile the additional compensation they received with the hours they recorded. It appeared Apple Bus was merely throwing a little money their way in the hope that they would shut up and go away.

30. The failure and refusal of Apple Bus to pay Plaintiffs for the time they actually worked resulted in two separate but related problems. First, there were instances when Plaintiffs worked in excess of 40 hours period week such that they would have qualified for overtime pay but did not receive overtime pay. Hibdon believes this occurred with particularly frequency towards the end of the 2017 school year, when she was required to clean numerous busses in addition to performing other tasks. Cassidy believes her hours during the following pay periods would have warranted overtime pay had they been properly accounted for by Apple Bus:

        a.     February 4, 2018 to February 17, 2018, Cassidy worked 115.25 hours, but she only received $1,328.58. This equals a payrate of $11.53 per hour, which was below her promised payrate of $12.25 per hour.

        b.     January 21, 2018 to February 3, 2018, Cassidy worked 129.50 hour, but she only received $1,464.10. This equals a payrate of $11.31 per hour, which was below her promised payrate of $12.25.

   c. September 17, 2017 to September 30, 2017, Cassidy worked 143 hours, but she only received $1,657.10. This equals a payrate of $11.59 per hour, which was below her promised payrate of $12.25 per hour.

Plaintiffs are in the process of attempting to identify all instances when they would have qualified for overtime pay but did not receive overtime pay.

  31. Second, there were pay periods when Plaintiffs worked forty hours or less (so they would not qualify for overtime pay) but worked more hours than they were paid for. To the extent Plaintiffs worked hours for which they were not paid, they worked for free for those hours, and therefore worked for less than the Missouri minimum wage per hour. Hibdon recalls the end of the 2017 school year as being a time period she worked numerous unpaid hours. In Cassidy's case, from January 7, 2018 to January 20, 2018, she worked a total of 85.25 hours, but she was only paid for 47.75 hours for a total wage of $580.15. Plaintiffs are in the process of identifying additional times when they were not paid for the hours they worked, which also resulted in Plaintiffs being paid less than the Missouri minimum wage.

  32. Besides the foregoing, Apple Bus did not pay Plaintiffs or other members of the class for completing the forms they were required to complete to record their time. Apply Bus did not pay Plaintiffs or other members of the class for the time they spent trying to secure proper compensation from Apple Bus on the numerous occasions when Apple Bus failed to pay them in strict accordance with the information on these forms. Securing proper compensation from Apple Bus was a separate, properly-compensable task. By failing to compensate Plaintiffs and other members of the class for this task, Apple Bus committed a further violation of federal and/or Missouri law.

## COLLECTIVE ACTION ALLEGATIONS

33. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalves and on behalf of all individuals who are presently employed by Apple Bus on a non-exempt hourly basis or were employed by Apple Bus on a non-exempt hourly basis at any time during the applicable statute of limitations period. Excluded from the putative class are all of Defendant's executives, administrators, professional employees, and outside sales persons.

34. A collective action is appropriate because, under 29 U.S.C. § 216(b), the putative class members are similarly situated to Plaintiffs, in that they worked in the same or similar positions, were subjected to the same unlawful practice, policy, or plan, and their claims are based upon the same factual and legal theories.

35. The working relationships between Apple Bus and the members of the putative class differ from class member to class member only in name, location, exact job duties, and rate of pay. These relationships are otherwise exactly the same. The key issue in the collective action—whether Apple Bus intentionally and routinely shaved and continues to shave hours from employees' reported time to avoid paying overtime compensation in accordance with the FLSA—does not vary substantially from class member to class member.

36. Defendant's malfeasance is likely provable through examination of its own business records. If Defendant billed school districts for a certain number of employee hours and paid employees for a lesser number of hours, this shows or strongly suggests Defendant shaved hours from the pre-printed forms employees were required to submit.

37. Plaintiffs estimate that the putative class, including both current and former employees over the relevant period, will include over 40 members in the State of Missouri alone and total in the hundreds in the various other states where Apple Bus does business.

The precise number of class members should be readily discernible from a review of Defendant's records.

## CLASS ACTION ALLEGATIONS

38. In addition to bringing this lawsuit as a collective action under the FLSA, Plaintiffs also bring this lawsuit as a state-wide class action under Rule 23 of the Federal Rules of Civil Procedure.

39. Plaintiffs bring this action on their own behalves and on behalf of all individuals in the State of Missouri who are presently employed by Apple Bus on a non-exempt hourly basis or were employed by Apple Bus on a non-exempt hourly basis at any time during the applicable stature of limitations period. Excluded from the class are all managerial employees of Apple Bus and its corporate affiliates. Plaintiffs reserve the right to modify this class definition as discovery or other case circumstances warrant.

40. Although the exact number of class members is presently unknown, it is estimated that there are at least 40 individuals in the State of Missouri that fall within the class definition. This class easily satisfies the numerosity requirement for class certification.

41. Class certification is also appropriate because there are questions of fact and/or law that are common to the Plaintiff and the class. These common questions of fact and/or law include, but are not limited to:

    a. Whether class members were lawfully compensated a minimum wage for the time they worked at Apple Bus;

    b. Whether class members were lawfully compensated overtime wages for the overtime they worked at Apple Bus;

    c. Whether Apple Bus breached the implied employment contract it had with each class member; and

d. Whether Apple Bus unlawfully benefited from not paying class members for their work at Apple Bus, while it simultaneously billed school districts for the worked performed by the class members.

42. Plaintiffs' claims are typical of the claims of members of the class, all of whom are current or former employees of defendant Apple Bus.

43. Plaintiffs are members of the class they seek to represent, and the claims they advance on their own behalves are identical to the claims asserted on behalf of the class.

44. Plaintiffs are adequate class representatives in that, as members of the class and former employees of Apple Bus, their interests are entirely aligned with those of the class.

45. There are no individual conflicts that prevent Plaintiffs from adequately representing the class.

46. Plaintiffs have retained competent counsel experienced in class action litigation.

47. Class certification is proper because common questions of law and fact predominate over questions that may affect only individual members of the class. The putative class members are or were employees of Apple Bus, which unlawfully underpaid all class members, and unlawfully benefited from all class members' work.

48. A class action presents a superior form of adjudication over individual litigation.

49. The costs of litigating this action against entities like Apple Bus, in comparison to the recovery or relief sought, would make individual litigation impracticable. In addition, forcing individual litigation would risk the result of inconsistent rulings with respect to Defendant's duties owed to the various class members.

50. The class action is manageable. The proposed class represents an identifiable community that can be readily identified, and the relief sought is one that can be overseen by the Court.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF MISSOURI MINIMUIM WAGE AND OVERTIME REQUIREMENTS

51. Plaintiffs incorporate by reference the forgoing allegations as if fully set forth herein.

52. Plaintiffs are members of a class that meets the requirements for certification and maintenance of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

53. Defendant is an "employer" and Plaintiffs are "employee[s]" under § 290.500 RSMo.

54. Section 290.502 RSMo. requires employers to pay employees minimum wages for all hours worked. Section 290.505 RSMo. requires employers to pay employers to pay employees one and one half times their regular rate for all hours worked over forty (40) per work week. Section 290.527 RSMo. provides that employers who violate the provisions of this act are liable to the affected employee for unpaid wages, liquidated damages, costs, attorney's fees, and other appropriate relief.

55. Throughout the applicable statute of limitations period, Defendant violated §§ 290.502 and 290.505 by regularly and repeatedly failing to properly compensate Plaintiffs and class members for the actual time they worked each week. Defendant improperly manipulated Plaintiffs' time records by shaving hours from the pre-printed forms Plaintiffs

and class members were required to complete to record their time, and by failing and refusing to pay Plaintiffs and class members for all the compensable tasks they performed.

56. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and the class have sustained and will continue to sustain damages in the form of lost wages, unpaid overtime and other damages.

57. Defendant is liable to Plaintiffs and the class for actual damages, liquidated damages, recovery of attorney's fees and costs, and prejudgment interest as allowed by law.

WHEREFORE, Plaintiffs pray that this Court will enter judgment in their favor against Defendant for (1) an award of compensatory damages; (2) liquidated damages as allowed by § 290.527 RSMo.; (3) attorneys' fees and costs as allowed by § 290.527 RSMo.; (4) prejudgment and post-judgment interest as provided by law; and (5) for such other relief as the Court deems appropriate.

## **COUNT II: VIOLATION OF THE FAIR LABOR STANDARDS ACT OVERTIME REQUIREMENTS**

58. Plaintiffs incorporate by reference the forgoing allegations as if fully set forth herein.

59. At any and all times relevant hereto, Apple Bus was an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(d).

60. At any and all times relevant hereto, Apple Bus was an "employer" within the meaning of 29 U.S.C. § 203(d).

61. At any and all times relevant hereto, Hibdon, Cassidy, and each member of the putative class was an "employee" as defined by 29 U.S.C. § 203(e).

62. During the applicable statute of limitations period, Plaintiffs and class members were not paid for all hours worked in excess of 40 per week in violation of the maximum hours provisions of 29 U.S.C. § 207(a).

63. At all times relevant hereto, the action of Apple Bus to not pay for all hours worked over 40 in a week was willful in that among other things:

   a. Apple Bus knew the FLSA required it to pay time and one-half for all hours worked over 40 in a week;

   b. Apple Bus failed to maintain true and accurate time records; and

   c. Apple Bus intimidated employees who questioned whether they were being paid for all hours worked by falsely accusing employees of fabricating hours and/or failing to timely submit the required forms.

64. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and class members have sustained and will continue to sustain damages in the form of lost wages, unpaid overtime and other damages.

65. Defendant is liable to Plaintiffs and the class for actual damages, liquidated damages, recovery of attorney's fees and costs, and prejudgment interest as allowed by law.

WHEREFORE, Plaintiffs pray that this Court will enter judgment in their favor and in favor of the class and against Defendant for (1) an award of compensatory damages; (2) liquidated damages as allowed by 29 U.S.C. § 216; (3) attorneys' fees and costs as allowed by 29 U.S.C. § 216; (4) prejudgment and post-judgment interest as provided by law; and (5) for such other relief as the Court deems appropriate.

### COUNT III: BREACH OF CONTRACT

66. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

67. An implied employment agreement existed between Plaintiffs and class members, on one hand, and Defendant, on the other hand, the terms of which included, but were not limited to, an agreement by Plaintiffs and class members to perform services as employees of Apple Bus and an implied agreement by Apple Bus to pay plaintiffs a lawful rate for all work performed.

68. The agreement was made between parties capable of contracting and contained mutual obligations and valid consideration. Plaintiffs and class members performed all conditions precedent, if any, required to them under the implied agreement.

69. Defendant failed and refused to perform its obligations in accordance with the terms and conditions of the implied agreement by failing to compensate Plaintiffs and the class for all time worked on behalf of Defendant.

70. Plaintiffs and class members were thereby damaged in an amount yet to be determined.

WHEREFORE, Plaintiffs pray that this Court will enter judgment in their favor and in favor of the class and against Defendant for compensatory damages and pre- and post-judgment interest as provided by law and for such other relief as the Court deems appropriate.

## COUNT IV: QUANTUM MERUIT

71. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

72. Plaintiffs and the class conferred a benefit upon Defendant by working on its behalf without being compensated at a lawful rate for all work performed.

73. Defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiffs and class members.

74. Defendant accepted and retained the benefit under such circumstances as to make it inequitable for it to retain such benefit without repayment of its value.

75. Plaintiffs and class members have thereby been damaged.

WHEREFORE, Plaintiffs demand judgment in their favor and in favor of the class and against Defendant and pray for compensatory damages, pre- and post-judgment interest as provided by law, and for such other relief as the Court deems appropriate.

## COUNT V: UNJUST ENRICHMENT

76. Plaintiffs incorporate by reference the forgoing allegations as if fully set forth herein.

77. Defendant has been enriched or has benefited by its deficient payments to Plaintiffs and the class for work performed. Such enrichment or benefit was incurred by Defendant at the expense of Plaintiffs and class members who were not fully compensated at a lawful rate for their work.

78. Plaintiffs and the class reasonably expected to be compensated in accordance with the law.

79. Defendant intentionally and with bad faith failed to pay Plaintiffs and the class at the proper lawful rate for all hours worked and for time worked.

80. It is unjust for Defendant to retain the benefits from the unpaid work performed by Plaintiffs and the class.

WHEREFORE, Plaintiffs demand judgment in their favor and in favor of the class and against Defendant and prays for compensatory damage, pre- and post-judgment interest as provided by law and for such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully Submitted,

BARTLE & MARCUS LLC


By /s/ David L. Marcus
    Matthew V. Bartle, MO Bar #40903
    David L. Marcus, MO Bar #47846
    BARTLE & MARCUS LLC
    116 W. 47th Street, Suite 200
    Kansas City, MO 64112
    Telephone: 816.285.3888
    Fax: 816.222.0534
    Mbartle@bmlawkc.com
    Dmarcus@bmlawkc.com

and

M. Blake Heath, #61939
M. BLAKE HEATH TRIAL ATTORNEY LLC
917 W. 43rd Street, Suite 100
Kansas City, MO 64111
(816) 931-0048 Phone
(816) 931-4803 Fax
blake@heathinjurylaw.com

**ATTORNEYS FOR PLAINTIFFS**